## 50144. TRUST COMPANY OF GEORGIA et al. v. THOMPSON.

DEEN, Presiding Judge.

1. The plaintiff Patricia Thompson purchased an automobile with money borrowed from the defendant Trust Company of Georgia and on which the bank had

a security interest and an agreement covering monthly instalment payments. The conditional sales contract form in evidence includes the statement: "Property insurance may be obtained by the borrower through any person of his choice. If obtained through the bank such insurance will cost $113 for 12 months ASIC [American Security Insurance Company]. "A policy was issued to the plaintiff from this insurer with the incumbrance listed and notice to report any loss to Woods Insurance Agency or the bank. A one-year premium was included in the instalment contract, ending June 30, 1972. The plaintiff testified: "It went dead June 30, 1972, and they [the bank] sent out a letter and I didn't have the money to pay them, so I didn't have any money in July of '72, and then they sent me out another letter and I had my insurance renewed in August of '72 for twelve months." The letter referred to is undated, on bank letterhead, shows insurance cancellation date as June 30, 1972, requests proof of insurance by the plaintiff within 7 days, and states that otherwise the bank will, as provided for in the sales contract, purchase the necessary insurance to cover its interest, add it to the loan, and issue a new payment book, or "we can add 50 deductible collision to your account by an increase of your monthly payment to a total payment of $116 per month." A second conditional sale contract was issued dated August 23, 1972, showing a $113 insurance premium charge, a balance due on purchase price, ten monthly instalments of $116.37 and a final payment date of July 16, 1973. The loan was paid off at that time.

The only witness other than the plaintiff was the secretary of the insurance company, who testified positively that a renewal certificate was issued on May 30, 1972, prior to the expiration of the policy, extending coverage to June 30, 1973, and that this was done in the usual course of business as "the agents observe the usual custom of insurance agencies of issuing renewals from 30 to 60 days prior to the expiration."

2. The automobile was wrecked, with damage exceeding the insurance coverage. It is true, as the appellant contends, that no evidence of the date of the accident appears in the record, and for this reason alone

the judgment in favor of the plaintiff is without evidence to support it. Since, however, we find the judgment otherwise without evidence to support it, we assume herein that the wreck did in fact occur, as alleged in the petition, on August 12.

3. "An agent who negligently fails to procure insurance for his principal is liable to the principal for any resulting loss. See *Thomas v. Funkhouser,* 91 Ga. 478 (18 SE 312)." *Wright Body Works v. Columbus Interstate Ins. Agency,* 233 Ga. 268 (210 SE2d 801), and see *Anderson v. Redwal Music Co.,* 122 Ga. App. 247 (176 SE2d 645).

4. "The seller retains an insurable interest in goods so long as title to or any security interest in the goods remains in him." Code Ann. § 109A-2—501 (2). See also Code Ann. § 56-2405 (2). The bank thus had a right to take out insurance to protect its own interest, and, by agreement with the plaintiff, it became her agent to take out collision insurance for her, adding the premium price to the instalment price of the vehicle loan. The sole question here is whether there is any evidence to substantiate the plaintiff's theory that, after notification that the policy would expire on June 30, 1972, and a request for proof of current insurance which she did not meet, the bank's "renewal" of the original policy ran from July 1, 1973, when the insurance lapsed, or from August 23, 1973, the date of the renewal instalment contract including another twelve month insurance billing. The contract itself was paid in full and the plaintiff received her certificate of title in May, 1973. The dates of the insurance are not specified in the contract, nor was the plaintiff ever informed that coverage would extend for 12 months from the August 23 contract date. The certificate of the insurer and the testimony of the defendant's witness are uncontradicted that the coverage was extended prior to the June 30 expiration date for 12 months from that date. The mere fact that the plaintiff received a rewritten instalment contract in August is not evidence that she was uninsured in June and July 23 she contends. It follows that there is no evidence that the insurance lapsed and was subsequently reinstated, rather than renewed as the defendant's witness testified. Accordingly, assuming that the loss took place on August

23, 1973, the plaintiff was uninsured, without negligence on the part of the security creditor. The verdict in favor of the plaintiff was unauthorized.

*Judgment reversed. Evans, J., concurs. Stolz, J., concurs specially.*

ARGUED JANUARY 14, 1975 — DECIDED FEBRUARY 5, 1975.

*Patterson, Parks & Franklin, Bernard Parks, Lenwood A. Jackson,* for appellants.

*G. T. Crichton,* for appellee.

STOLZ, Judge, concurring specially.

I concur in the judgment of the majority only because there is no evidence in the record to substantiate the trial judge's finding that the loss occurred on August 12, 1972, within the policy period contended by the plaintiff. The complaint made an allegation to that effect. The answer stated that the defendant was without knowledge or information sufficient to form a belief as to the truth thereof, and neither admitted nor denied same. The date the plaintiff's loss occurred is not information which is particularly within the defendant's knowledge so as to make this type of answer an admission. See *J. D. Jewell, Inc. v. Hancock,* 226 Ga. 480, 485 (5) (175 SE2d 847). The plaintiff was thus required to prove this absolutely essential allegation of her complaint and failed to do so.